21-595-806 and 850 U.S. v. Tyrell Whitaker, Glenn Thomas, and Raymond Christian. And I understand that we will start with Mr. Sandick, and then Mr. Goodman, and then Ms. Schneider. Is that the batting order? Correct, Your Honor. Thank you. Okay. And let me just see. So, again, so I've got it. And I think that Ms. Schneider sort of transferred some of her time to the other two counsels. Is that right? That's correct. Okay. Very good. You may proceed. Thank you. Good morning. May it please the Court? My name is Harry Sandick. This Court should reverse Tyrell Whitaker's conviction because the only non-cooperator evidence that tied him to the attempted robbery was a taped conversation that was improperly admitted as a statement against penal interest under Rule 804b3. The recorded conversation in which Jamar Mallory, a cooperating witness, speaks to Kevin Burden. Burden is the declarant. Burden did not implicate himself in the robbery, did not make statements against penal interest. Indeed, he repeatedly— He says, I gave someone a gun, but he denies any participation in the robbery over and over again. It's that last part, Your Honor, that he knew that they would be used in a robbery. And he says throughout the discussions, I stayed home. I didn't know what was going on. He acknowledges that he gave a gun to people involved in the robbery. He said he didn't know what was going on? He says, I stayed home that night. I had nothing to do with it. I didn't know. Right. Two different things. But he gave them guns for a jux, which means a robbery. I thought it was jukes. What's the pronunciation? I couldn't tell you. I think I saw J-U-K-E-S later. But he said that, right? So does that mean that he knew that it was for a robbery? He says repeatedly that, you know, I didn't know what was going to happen that night. He says— Right, but if he says it's for a jukes or a jux or whatever, however you pronounce it, what that means is he knows that there's going to be a robbery but didn't know the details of it. I think what he says is, and I'm just looking here at Excerpt 4, which is the place where I think this comes from. And he says, this is on page 321 of the appendix, they got a jux, some nice jux lined up, that's all you told me. You said they need that, they need the scats, and at the end of the day, and then there's some unintelligible comment. So he knows what they have lined up, and I take it it's a slang term for a robbery. So why—so doesn't that mean that he knows? What is the word they need? It's equivalent to gun. Scat. Scat, which is a slang for gun in this context. Is jux slang for robbery? I think in this context, it's not clear to me. Actually, I'm not sure that it is a slang for robbery.  And maybe there might be—we can discuss how we know what the jux refers to. But he doesn't know what they need the guns for, right? That's what that statement says. He says, I gave—this is on page 322. I gave the scat to you, meaning Mallory, and then I went to the weed spot. Bow wow, that's my client Whitaker. Bow wow, and then those guys went straight upstairs. I've seen him going upstairs. I said, who's going to hold my scat, know what I'm saying? And then you said Gucci or somebody. Gucci is Glenn Thomas, co-defendant. Even if, Your Honor, that one specific excerpt is admissible under 804b3, it doesn't justify the admission of all of these statements throughout these five excerpts from a conversation. Because Whitaker—I'm sorry. Because at the time when these are admitted, they're not just admitted as to the very specific excerpts, the way Williamson says, you go statement by statement. These are five excerpts over many, many pages of transcript. So even if we were to say, well, maybe this one isolated piece that Your Honors are focusing on should have been admitted as a statement against penal interest, it doesn't mean that everything that happened in these excerpts therefore becomes admissible. What was one of the parts that in your view should not have come in as a statement against penal interest that was somehow prejudicial to your client? Sure, the discussion about membership in the Bloods in Excerpt 2. Membership in the Bloods, that in the other excerpts that are clearly admissible, indicate that the Bloods committed the robbery? No, I think that in that excerpt, the discussion is about whether being in the Bloods is a good thing or a bad thing. Even the government below said that membership in a gang standing alone is not a statement against penal interest. But it's not standing alone. He has just admitted in other clearly admissible excerpts that he knows members of the Bloods that are going to commit a robbery and that he's given them a gun. This is defining the group, the characteristics of the group to which he knows he is purposely giving a gun to commit a robbery. Your Honor, the statement in Excerpt 2 is purely about the virtues of joining the Bloods, about a better life for yourself or how to have faith for yourself. That statement is not self-inculpatory as to burden. Well, not standing alone in the sense of out of context, but that's not what we mean by standing alone. When it's standing alone, we don't look at every sentence and say, you know, I walked downstairs. I said, oh, walking downstairs is not inculpatory. But if I said I walked downstairs and handed him the gun to go commit the robbery, then walking downstairs is inculpatory. Well, that specific part of it would be inculpatory, but they're letting in page after page of discussion. Excerpt 2 is one page. Well, the pages as a whole are page 313 running through 324. So it's 11 pages of conversation. And this is being handed to the jury, you know, through an audio tape with transcripts to follow along. Williamson says you go statement by statement. There's a debate in Williamson between the majority opinion by Justice O'Connor and a dissenting opinion by Justice Kennedy. And the majority wins. Yes. And Justice O'Connor said essentially you do not – she said here's the position we reject, that an entire narrative, including non-self-inculpatory parts, may be admissible if it is in the aggregate self-inculpatory. She also gives these examples of multiple sentence statements where maybe one sentence is the killer, right, which is, you know, I shot Joe. But the preceding sentence is, you know, I got in the car with Joe. We drove over to his house. Then I shot Joe. The first two sentences come in, too. But what – In context, even though the sentence when you diagram it alone is not inculpatory, but in context it is. But what the majority opinion also states is that the deliberately self-serving parts of it, even Justice Kennedy, they all acknowledge that the self-serving, self-exculpatory portions of this should not be admitted. And page after page of this you have Burden saying I'm not involved. I stayed home. I was with the babies that night. I didn't say he's not involved. He just defines the scope of his involvement, which is he is the supplier of the guns. He says – I mean that would seem to suggest that anybody who is not the trigger man who reports his involvement in the crime can never have a statement against penal interest. That would suggest that the lookout outside the bank robbery is never going to have a statement against penal interest because he's not as bad as the guy who went into the bank. Well, Burden says repeatedly we wasn't on point. Mallory asks him directly, in substance, what did you have to do with the robbery? Burden says I had nothing to do with it. Why were those portions of the statement admitted? Under Justice Kennedy's opinion – I'm sorry, under Justice O'Connor's opinion in Williamson, the court should have gone statement by statement. Tell me how you were prejudiced by the part where he said he stayed home. Sure. We're prejudiced by the fact that Burden is coming in without cross-examination and pointing the finger at other people, blaming – But now I think – I'm talking about the portions that said I stayed home. I understand your argument that all of it should have come out, but then you have a different argument that says, well, even if some should have come in, some should have stayed out. Right. That's the self-exculpatory stuff. And I'm saying – I'm asking you, how is the self-exculpatory inclusion of, say, the lines that said I stayed home that night, if you assume that the other stuff came in, how is your client hurt by having the line come in and I stayed home that night? Sure, because the narrative that he's presenting in this uncrossed statement is other people did this, I had no involvement in it. Yeah, but the question about prejudice is what's the overall evidence? Yes. And if there's sufficient other evidence that the jury can get beyond a reasonable doubt, it's hard for me to see how there's prejudice. So – sorry, I didn't mean to speak over. The government argued in summation in a case where all of the other evidence that ties Whitaker to the crime was from cooperators. They said, but we have a witness who was not a cooperator, a witness who had no incentive to lie, and that is referring to Burden, the declarant in this statement. Burden identifies different participants in the robbery in Excerpt 1. In Excerpt 2, he ties Whitaker and others to the bloods. In Excerpt 3, there's a long narrative from Mallory about the crime that Burden seems to accept and talks about Whitaker disengaging, implicitly accusing him of being part of the robbery. What would he have to disengage from otherwise? Excerpt 4 is the chrome gun discussion. So there is prejudice here, and the government argues to get the statements in. All of the 11 pages of excerpts, the district court doesn't go piece by piece, just sort of looks in the aggregate of the excerpts and says, you know, well, broadly speaking, there are aspects to this that are inculpatory as to Burden, and he lets them in. All of them in. That's the error. Mr. Sandick, we've got a line up of your colleagues who I think would also have a few things to tell us. So why don't we turn to Mr. Goodman. And Mr. Sandick, you have to observe a minute of rebuttal, even though we kept you up a little bit. Thank you. Thank you. May it please the court, my name is Jeremy Gutman. I represent Appellant Glenn Thomas, and our only issue that remains is the same one that my colleague has ably presented regarding the admission of hearsay statements pursuant to the exception for statements against interest. I'd like to point out several of the statements, and we go through them all in our brief in some detail. But just to address a few of them, and these have nothing to do, even assuming that there was an admissible statement in Excerpt 4, which we disagree with, and I'll address that also. However, there was, in Excerpt 1, Burden identifies all of the people who participated in the robbery, or he confirms what Mallory, the person he's speaking to- This is when he talks about who comes to his house and to whom he gives the guns. No, this is, in the first excerpt, he's essentially saying who participated in the robbery. It goes beyond the people who came to the house. And for one thing, it's not based on personal knowledge. He lists everyone who came in a cab. Yes. Meaning they came to his house. He's remembering how they arrived at the house where he was located. Right, and- And then he describes how he gave them a gun, right, the Krone 38? Well, he doesn't talk about giving them a gun in this statement. That's the cooperator who says that they snatched up the joints. Nothing Burden says when he gives that list of people who came in the cab. Nothing in that incriminates him in any way. It is just, it is a freestanding, neutral statement. Well, but he acknowledges when the cooperator refers to the Krone 38, he acknowledges, yeah, he says the Krone 38. The cooperator says that these other people came and took the guns, and then just a few lines down at the bottom of that page, the cooperator asks Burden whether these other people brought the hammers back, brought the guns back, to which Burden replies, the Krone joint? I never seen that gun again, bro. I never seen that gun again. So by saying I've never seen the gun again, Burden is acknowledging the earlier statement by the cooperator that the guns were taken by these people the night that they came in the cab. I stand by the point that he's not, he's- What have I just said that's, how am I misreading this? Put it that way. I believe that it's, that going through the entire list of who was there is not, it is not corresponding to something where he is inculpating himself, where this remark has such a tendency- He's questioning the people who committed a robbery to whom he gave a gun. He's admitting that he conspired with a list of people by giving them a gun so they could commit a robbery. How is that not a statement against a penal interest, listing your co-conspirators? I believe following the instructions of the court in Williamson that this is exactly what Williamson says is not to be done, to take something from the entire, you know, from a different part of a different statement and use that to justify another one. If I could turn to another example, there is a discussion about saying that Mr. Thomas engaged in this conduct because he was doing exactly what the gang leader wanted him to do. He was doing this because that's what you have to do if you want to be a blood. That's Excerpt 2, right? Yes. And that- Where the co-operative says it came from L1, that's his name, Williamson? That's the gang leader, yeah. That's the gang leader. Yes. Again, nothing about this statement is incriminating of burden, but it's very, it supports the government's narrative- The purpose, the criminal purpose of the conspiracy that he had just stated he'd supplied a gun to. It shows that he demonstrates the mandatory part of the crime. Your Honor, I believe the connection to the supplying of guns is too tenuous. He's now talking, he's essentially, and it's again implicitly a double hearsay that he's relating what he thinks was the conversation between L1 and Thomas. It's not, by saying this, he is not incriminating himself. If the court had done what we believe Williamson requires it to do, which is to go through each statement, parse it, as this court indicated in Jackson, is also required. If the court had done that, it would have struck, it would not have admitted this. Again, I think the government does not respond to our point-by-point discussion of this and many other statements that don't independently satisfy the test for being against interest. They also don't satisfy the test for being trustworthy. And in that regard, the Excerpt 4 statement is not only not corroborated by other testimony, and I'm referring to the statement that Burden says he was told by Mallory, the person he's speaking to, that the purpose was to commit a robbery. Mallory himself, testifying as a cooperating witness at trial, said, I didn't know what the purpose was. And denied, so the perhaps key part of Excerpt 4 is something that there's no evidence is trustworthy. Can I ask you one question? I neglected, Mr. Sandeke, you can address this when you're in a rebuttal. This is sort of a housekeeping matter, but Counts 4 and 5, if I'm getting the numbers right, were vacated, right? Yes. And I would assume that all of the defense would now take the position that the claims that were previously briefed on that are now moot because of the vacator and that we wouldn't need to address them. Is that accurate? Yes, Your Honor. This issue that we're arguing is the only one that hasn't been rendered moot by the vacating. That's great. Thank you very much, Mr. Governor. And then maybe when each of you comes up either to argue or to un-rebuttal, if you could just, for the record, just clarify whether our understanding is accurate, that would be helpful. Thank you. I have a question, and that is the prejudice point again. Your colleague said that because the others were all cooperators, therefore, this was prejudicial because the government said that this is a witness that wasn't cooperating and therefore should be accepted and intended to cooperate with the others. Is that the position you're taking on the lack of prejudice? Oh, absolutely, Your Honor. And with regard to Mr. Thomas, there was no identification of him as being a participant. No one who was at the scene of the robbery identified him as being one of the people there. There was no photograph of him there. There was no forensic evidence. So the only evidence was from two, only two of the witnesses, both of whom were cooperators and both of whom told extraordinarily different versions of what became their trial testimony. This is the case, however, where the jury, where it's evident that the jury rejected the cooperator's statement. It's quite the opposite. They accepted the cooperator's statement. So the credibility of the cooperators, I don't understand how that plays into this. Because as the government itself recognized by saying to the jury, if you have a problem with Mallory, if you have a problem with the other cooperating witness- That's not admitting that there was a problem. And my question is whether or not everything, the whole case depended on Burden's statement. Well, Your Honor, this isn't a legal sufficiency argument. I think in terms of for harmless error, the court has to be satisfied that this had no effect on the jury's verdict. The fact that- Is that right? Are we under Chapman? I didn't think this was a confrontation clause issue, is it? I thought this is purely rules of evidence. So aren't we under the Kodiak standard instead of the Chapman standard? Your Honor- I thought you would have the burden of proving a substantial injurious effect on the verdict, not the government proving harmlessness beyond a reasonable doubt. It's not a constitutional violation of reason. No, it's not beyond a reasonable doubt. But if the court finds error, which we believe it should, the standard is to establish that it's harmless would be that the court has reasonable assurance, and I forgot the name of the case, but it cited- Kodiak had a substantial injurious effect on the verdict, no? I think it's less than that. I think it's that the court can't say it's harmless unless the court has reasonable assurance that this evidence didn't sway the verdict. And your position is that if we find that there was some erroneous admission of some of these materials, that the burden would be on the government to prove harmlessness, whatever the verbal formulation of that standard might be? Yes, Your Honor, and it's just that the jury might not have been convinced beyond a reasonable doubt. And that's because you objected, you preserved this, and therefore it's not plain error, so the burden is on them. Yes. Thank you. Thank you very much. Why don't we hear from Attorney Schneider? You've allocated yourself a whole minute. Okay, not enough time to fiddle with that. May it please the court, Tina Schneider for Raymond Christian. I only have a minute because the arguments that we concentrated on in our brief have been rendered moot. We join in our co-defendants' arguments about the admission of these tapes. And I just wanted to say one thing. First off, my client was named in Excerpt 1 in the part of that excerpt where the cooperating witness says to Burden, oh, here, I'm going to refresh your memory. Here are the names of the people who were involved in the robbery. And secondly, and he was also named, he was also discussed in another excerpt. Apparently he was successful in refreshing his recollection. Well, the only response from Burden was to supply the name of someone's son, Bichelti's son. Burden doesn't say, oh, yes, I agree that those are the people involved. But just in terms of prejudice, I just, you don't have to take our word for it that this was prejudicial to the defense. The government argued in its rebuttal closing that this tape and Burden's statements on it were absolutely devastating to the defense. Can I just ask you, and I may have the defendants confused, but wasn't it your client's DNA that was found on the hat that was found at the crime scene? Yes. That's pretty bad. We're not challenging the sufficiency of the evidence. But where the government has set this tape up as the capstone of its case, they can't turn around and say, well, it didn't really matter. Well, we don't have to necessarily believe them as to what we think would have been the most devastating piece of evidence for the jury. And it's kind of hard for me to get around the notion that your client's DNA on a hat at the murder scene is somehow not the capstone piece in the jury's mind. The government didn't present it as that. There were problems with the DNA, the collection and whatnot. And thank you. Yeah, thank you very much. So why don't we hear from the government and let's try to keep this to 15 minutes. Certainly. May it please the court, my name is Christopher Clork. I'm an assistant United States attorney in the Southern District of New York. I represent the United States before the district court and on appeal. Judge Ramos did not abuse his discretion when he admitted the out-of-court statements of Burden as statements against Burden's penal interest. Judge Ramos heard extensive oral argument on the subject, conducted a detailed analysis of the statements that the government offered, and determined that they were replete with statements against Burden's penal interest, including statements about the firearm that Burden provided to individuals who were involved in the robbery, statements about Burden's membership in the Bloods, and the link that Bloods' membership had to the robbery itself, including how individuals were selected to participate in the robbery. And Burden also included statements about his broader, more general possession of firearms, all of which were statements that were clearly against Burden's penal interest. Judge Ramos also determined that these statements were also corroborated substantially by other evidence offered at trial, including statements by several of the government's other witnesses. I won't go through each of them, but I will say that there were multiple witnesses who provided testimony that was consistent with Burden's testimony. So Judge Ramos not only found that the statements were against Burden's penal interest, but they were reliable because there was other information, there was other evidence presented at trial that corroborated those statements. How do we stand if we were to conclude that some of the statements were not against his penal interest, but there was corroboration? Well, I think there were two statements. That's a different – you're relying on a different section of the Federal Rules of Evidence there. Correct. You're not relying on Burden against penal interest. Well, correct. So, for example, Burden makes statements during which he extols sort of the virtues of becoming a member of the Bloods, teaches you how to be a man. Those statements were not offered for their truth, and so they're not statements. They were background. They were additional information. I'm sorry. What's background? That's background. That's not a thing. No, not background. If they were not offered for the truth, you're saying? So Burden's- What were they offered for? Burden's membership in the Bloods, generally, was offered for its truth because- So, hang on. I'm really not understanding. Sorry, excuse me. Are you saying that these statements were offered for the limited purpose of demonstrating Burden's membership in the Bloods? What was the purpose? Did you articulate a purpose in the district court and say these are admissible for a limited purpose? Did the district court give a limiting instruction? The district court did not give a limiting instruction. So, I don't understand what that means that it wasn't offered for the truth. If there's no limiting instruction, they're considered for all purposes, including the truth of the statements contained therein, unless there's a limiting instruction. Because how would the jury know that they're supposed to be not considered for the truth? No, that's understood, Your Honor. You're correct. I think the point that I'm making here is simply that Burden's statements, with respect to his Blood membership, were against his penal interest. And they were properly- And they were only against his penal interest if they're admitting the truth, that he really is a member of the Bloods. Correct. You're just making the narrow point that you weren't trying to prove that joining the Blood makes you into a man. You were trying to prove that he was a member of the Bloods. Right. That is the point I was making, Your Honor. And so, I tried to parse that inarticulately at the beginning, where I said his membership in the Bloods was a statement against his penal interest. However, the specific statements that being a Blood teaches you how to be a man was not specifically offered for the truth. And I assume that your opponents were not opposed to the notion that being in the Bloods makes you a man or does not make you a man. That was not, I assume, an issue that anyone was debating. That is correct, Your Honor. Unless, Your Honors, you have any- Did the district court impermissibly use some other statements as context for other statements to determine that they're against penal interest? Should it have gone statement by statement more precisely? Well, Judge Ramos did conduct a thorough analysis of the statements that were offered by the government in his opinion when he ruled on the defendant's post-trial motions. So, I think it is not accurate to say that Judge Ramos did not conduct a thorough analysis of the statements and did not consider them in their totality before he made his ruling. I think the issue here is that we sort of see that analysis in the post-trial ruling, but it doesn't mean that that was not an analysis that affected Judge Ramos' assessment initially. So, I think it is incorrect to suggest that Judge Ramos did not do an analysis or a thorough analysis of the statements included in the excerpts, Your Honor. In fact, he sort of admitted them piecemeal over the course of the trial, right? He heard an argument up front, and then he at a certain point said, well, these will come in, but I'm reserving a decision. Let me hear some more. Then he let the more in over time, and he- So, his rulings on the various excerpts did not all occur simultaneously. In fact, he demarcated different points where he was deciding to let them in, right? That's correct, including hearing testimony from Mallory before determining whether or not these statements were admissible. There's also an instance in Excerpt 1 where Judge Ramos reviewed Excerpt 1 and then concluded that certain portions of that excerpt needed to be redacted before that particular excerpt was admitted at trial. Thank you. All right. Thank you very much. Why don't we hear from Mr. Sandik and then Mr. Gutman for a minute of rebuttal each, if there's anything. And Mr. Sandik, if you could just confirm whether what I asked about Counts 4 and 5 is also true for your client. It is. The only other issue that remains is one we haven't presented an argument today, which would just rest on our briefs, which relates to the transfer to adult status. Yes, of course. That's still in the case, but the other arguments, the counts have been vacated in light of the Supreme Court's decision. Thank you. So I just wanted to briefly point out that in addition to the question of were the statements against penal interest, there is also a requirement to quote the circuit's decision in Salvador that the statement has to be supported by corroborating circumstances that are strong, not merely allowable. And here there were many aspects of both the witness and the statements that he made that call into question the corroborating circumstances. Burden is someone who is speaking to somebody who has plied him with alcohol 20 months after the crime. Mallory keeps saying in response to evident failures of recollection or unwillingness to talk, let me refresh your recollection, he says on three occasions in the first excerpt. Burden was aware that there were informants in the case, such as Williams, and so he had a reason to be cautious about what he would say and wouldn't say in these statements. And then there are specific inconsistencies. At trial, Baines says that Williams provided the guns. Doesn't mention Mallory or Burden as providing guns. Burden says that after being told his gun doesn't work, he shot it out the window before the robbery. But Mallory gives inconsistent stories, both in his 3500 and at trial. Burden once told a cooperating witness that Mallory and Williams shot Henry, but then says on the tape that Mallory was not on point, agreeing with Mallory's denial of responsibility there. So there are all of these inconsistencies. And the reason why this matters is that this is foundation for allowing in testimony that is not cross-examined. And when we have uncross-examined testimony, the courts, this is the point of Williamson and this court's decision, the Ogden, are supposed to be extremely careful in terms of letting that get to the jury and going statement by statement and only letting in essentially the bare minimum that actually is self-inculpatory and has corroborating circumstances. And although the district court did do analysis at the end of the case on a different standard in a Rule 33 motion, that's no substitute for making the rulings statement by statement as the trial went along, which respectfully the district court did not do. Thank you very much. Why don't we hear Mr. Gutman, if there's any last thing that you would like to add. Just very briefly, with regard to the idea that Judge Ramos conducted a detailed analysis, as to the examples I gave earlier, there was no attention paid to those statements individually prior to the admission. And as to most of the other ones that we discuss in detail in our brief, there was also no individualized attention. Thank you. Thank you very much to all counsel. Very helpful arguments. We will take the case under advisement.